## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHAD ALSIP, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| ACREAGE HOLDINGS, INC., IN GROWN FARM, LLC, NCC, LLC, ACREAGE HOLDINGS AMERICA, INC., and ACREAGE HOLDINGS WC, INC., | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Chad Alsip, individually and on behalf of others similarly situated, by and through undersigned counsel, and for his Class Action Complaint against Defendants In Grown Farm, LLC, NCC, LLC, Acreage Holdings, Inc., Acreage Holdings America, Inc., and Acreage Holdings WC, Inc. (collectively "Defendants" or "Acreage Holdings"), allege as follows based upon personal knowledge with respect to themselves, and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1.     Plaintiff brings this action against Defendants for unlawfully manufacturing, marketing, and selling potent "cannabis-infused products" ("CIPs") with excessively high tetrahydrocannabinol ("THC") content—well above the applicable legal limits imposed under Illinois law for consumers' health and safety. Defendants masquerade their CIPs as legal for purchase and consumption in Illinois; in actuality, however, the products vastly exceed the

1

applicable THC limits for CIPs, as well as the personal possession limits for those products. This subjects purchasers to risks of adverse effects associated with overconsumption of THC, as well as legal risks for possession of illegal products.

2.     The CIPs at issue are vapable products like cannabis oil vaporizer cartridges, disposable oil vaporizers, and others such as resin, rosin, hash oil, budder, badder, crumble, and shatter (collectively referred to as "Vapable Oils"). Vapable Oils are used in conjunction with a device to vaporize their contents, which are then consumed via inhalation *i.e.* "vaping."

3.      Consuming Vapable Oils does not utilize combustion and their consumption is thus not considered smoking for purposes of the Illinois Cannabis Regulation and Tax Act (the "CRTA") or the Illinois Compassionate Use of Medical Cannabis Program Act ("Medicinal Act," collectively with the CRTA, the "Illinois Cannabis Acts"). Rather, Vapable Oils are a type of CIP, as they are intended to be consumed by vaporizing the contents and then inhaling them using a non-combustible heating device.

4.     Nevertheless, Defendants manufacture, market, label, and package their Vapable Oil products as though they were smokeable concentrates, in 300-milligram, 500-milligram and 1-gram quantities, including under its own brand names, such as Superflux and Botanist.



5.     Under Illinois law, CIPs are not allowed to contain more than 100 milligrams of THC per package. Despite this, Defendants' Vapable Oils universally exceed this legal limit by

five and a staggering ten times by marketing and presenting their products as smokeable cannabis concentrate when, in fact, the Vapable Oils are CIPs.

6.　　Defendants do this because cannabis concentrates are not subject to any per package limits and have higher personal possession limits, at a 5-gram personal possession limit for Illinois residents and a 2.5-gram limit for out-of-state consumers, for example.

7.　　Accordingly, Defendants are selling illegal Vapable Oils in single packages that universally exceed the legal THC limit imposed on individual packages of CIPs, as well as the personal possession limits imposed on Illinois residents and out-of-state consumers.

8.　　In doing so, Defendants intentionally or recklessly misrepresented that their Vapable Oils were cannabis concentrates when, in fact, they are CIPs.

9.　　On information and belief, Defendants made this misrepresentation to deceive regulators and consumers in order to allow Defendants to sell Vapable Oils using the 5-gram limit applied to concentrates, instead of the lower 500-milligram CIP limit imposed on Illinois residents, or the even lower limits imposed on out-of-state consumers.

10.　　This misrepresentation enabled Defendants to sell up to 11 times the amount of CIP an adult-use consumer is allowed to lawfully possess at one time, thereby exceeding the limits which could be sold to a consumer in a single transaction, and generating significant profits for Defendants at the expense of Illinois consumers and in spite of Illinois law.

11.　　Plaintiff and other consumers who purchased Defendants' Vapable Oils were misled to believe that they were purchasing a legal cannabis product that complied with statutorily imposed limits, required labels, and packaging. This deception continues to this day, affecting and harming consumers throughout Illinois daily.

12.     By deceiving regulators and consumers about the legality and of their products, Defendants were able to take away market share from competing products and increase their own sales and profits, all while subjecting consumers to real risks to their health and safety.

13.     As a result, consumers have been and continue to be overcharged, placed at risk from overconsuming Defendants' illegal product, and incurring other consequential damages and harm.

14.     Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Illinois Uniform Deceptive Trade Practices (815 ILCS 510/1 *et seq.*) and Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq.*), as well as common law torts of fraud and fraudulent concealment, declaratory judgment, breach of express and implied warranties, and unjust enrichment, among others.

## PARTIES

15.     At all relevant times, Plaintiff Chad Alsip has been a citizen of the State of Illinois and resident of Kane County.

16.     In Grown Farms, LLC d/b/a In Grown Farms, LLC2, is an Illinois limited liability company and is licensed as a Cultivator under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* and/or the Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.* In Grown Farms, LLC, is managed by Dennis Curran. In Grown Farms, LLC's cultivation operations are located in Freeport, Illinois.

17.     NCC, LLC d/b/a Botanist, is an Illinois limited liability company and is an affiliate, parent company, and/or alter ego of the Acreage Holdings entity licensed as a Cultivator under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* and/or Compassionate Use of

Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.* NCC, LLC, is managed by Dennis Curran, Corey Sheahan, High Street Capital Partners, LLC, and Philip Himmelstein.

18.     Acreage Holdings, Inc., is incorporated in the province of British Columbia, Cananda, and is an affiliate, parent company, and/or alter ego of the Acreage Holdings entity licensed as a Cultivator under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.*

19.     Acreage Holdings America, Inc., is incorporated in the State of Nevada, and is an affiliate, parent company, and/or alter ego of the Acreage Holdings entity licensed as a Cultivator under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.* Dennis Curran is the President and Director, Philip Himmelstein is the Treasurer, and Corey Sheahan is the Secretary of Acreage Holdings, WC, Inc.

20.     Acreage Holdings WC, Inc., is incorporated in the State of Nevada, and is an affiliate, parent company, and/or alter ego of the Acreage Holdings entity licensed as a Cultivator under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.* Dennis Curran is the President and Director, Philip Himmelstein is the Treasurer, and Corey Sheahan is the Secretary of Acreage Holdings, WC, Inc.

21.     Defendants share and operate out of the same headquarters located at 366 Madison Avenue, Floor 14, New York, New York 10017.

22.     The aforementioned Defendant entities operated as one entity under the umbrella of the parent company referred to as "Acreage Holdings" until their recent acquisition by Canopy Growth Corporation in December, 2024.

## CANNABIS INDUSTRY CORPORATE STRUCTURING

23.     Due to the federal illegality of cannabis and robust regulatory schemes at the state level, the cannabis industry maintains unique organizational designs.

24.     Operationally, the unavailability of traditional financing and banking services poses certain challenges.

25.     Of particular note is the unique nature of paying and filing taxes as a cannabis entity, where the federal tax code does not contemplate the sale of cannabis as a legal business. Specifically, IRS Code Section 280E prohibits a federally illegal business from claiming any deductions and credits thereunder.[1]

26.     To account for the complexity of the situation, cannabis companies created complicated, but integrated, corporate structures.

27.     As a general practice, many cannabis companies may maintain separate entities to hire their employees, hold their equipment, contract with vendors, and a host of other functions.

28.     While these entities may be separate on paper or in corporate filings, they are functionally one entity operating under a large umbrella of entities.

29.     Defendants follow suit by selling products under one national portfolio of brands, including Botanist, Superflux, and other brand names.

30.     The Defendant entities share such a unity of interest and ownership that the separate personalities of the corporations and/or individuals no longer exist.

---

[1] https://www.irs.gov/about-irs/providing-resources-to-help-cannabis-business-owners-successfully-navigate-unique-tax-responsibilities (last visited Jan. 24, 2025); https://www.foxrothschild.com/publications/high-time-for-cannabis-businesses-to-start-tax-planning (last visited Jan. 24, 2025); https://greengrowthcpas.com/cannabis-business-tax-guide/#:~:text=One%20key%20strategy%20is%2 0to, water%2C%20and%20nutrients%20for%20cultivation (last visited Jan. 24, 2025).

31.     Defendants share executive management and C-suite executives, policies and practices, payroll, internal support functions, and other resources.

32.     Defendants operate as a single, vertically integrated, centralized entity through Acreage Holdings parent companies.

33.     Defendants hold themselves out as one integrated system and operate as such, including by referencing all products on a single website:



34.     Such control and integration is admitted and discussed further in Defendants' own statements and reports, including those made by Defendants on its website.

---

[2] https://www.acreageholdings.com/our-brands/ (last visited Jan. 24, 2025).





35.     Defendants also own and operate an Illinois cannabis retail chain called Nature's Care Company, which provides various educational resources to cannabis users.

36.     On information and belief, Defendants also process, manufacture, and/or package Vapable Oils and other products for third-party brands.

## **JURISDICTION**

37.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

---

3 *See* https://naturescarecompany.com/; *see also* https://www.cannabisbusinesstimes.com/dispensary/news/15689711/acreage-announces-opening-of-natures-care-dispensary-in-chicagos-west-loop (last visited Jan. 24, 2025).

38.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed class contains more than one hundred (100) members, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from a Defendant.

39.     The Court has personal jurisdiction over Defendants because they jointly manufacture, process, produce, package, label, and sell their products and conduct other business in the State of Illinois. Additionally, Defendants In Grown Farms, LLC and NCC, LLC are registered to do business in Illinois.

40.     Defendants have been doing business in Illinois during all relevant times.

41.     Directly, and through their agents, Defendants have substantial contacts with the State of Illinois, have purposefully availed themselves of the Illinois market, and have received substantial benefits and income from their activities in Illinois.

42.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants have such significant contacts with this District so as to render them subject to the personal jurisdiction of this Court with respect to Plaintiff's action, and as such, are residents of this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including the purchases at issue that gave rise to Plaintiff's claims.

## COMMON FACTS

### VAPABLE OILS

43.     Vapable Oils are one of the most common forms of CIP sold in the State of Illinois. They are ubiquitous, and readily available at most dispensaries.

44.     Vapable Oils are generally sold in three formats – (1) disposables; (2) cartridges; and (3) raw. The following is a representative sample of each of these types of products:

  

**Disposables** **Cartridges** **Raw**

45.     Vapable Oil disposables come with a pre-charged battery and contain cannabis oil, pre-loaded for immediate use. Vapable Oil disposables typically consist of a pre-charged battery, heating element, filled reservoir containing cannabis oil, and mouthpiece in one device.[4]

46.     Vapable Oil disposables use the built-in battery to heat the oil in the tank until it vaporizes, then it is inhaled by the user. Once the user has finished with the product, they can dispose of the entire device.

47.     Vapable Oil cartridges, on the other hand, are pre-filled glass or plastic cartridges that contain cannabis oil. They are generally used with a "vape pen," which is a "battery that works in conjunction with [the] cartridge." When activated, the "battery heats up an atomizer in the cartridge which in turn heats up and activates the various compounds in the cannabis oil." *Id.*

48.     Ultimately, each Vapable Oil cartridge operates in a functionally similar, if not identical, manner. An atomizer is heated using a battery in order to heat and activate cannabis oil contained therein, which is then inhaled by the user.

49.     Raw vaporizable cannabis products, such as resin, rosin, budder, badder, crumble, sugar, sauce, shatter, wax, bubble hash, and diamonds, are typically vaporized utilizing a device

---

[4] *See* https://www.leafly.com/news/cannabis-101/types-of-cannabis-vape-carts (last visited Jan. 24, 2024).

called a "rig." The process of vaping in this way is referred to as "dabbing."[5] As such, these products are not sold in prepackaged cartridges or disposables.

50. Traditional glass dab rigs are made out of a water pipe that features a "nail" "or banger," which is heated manually to vaporize the product. The vapor flows into the rig and passes through the water, cooling and filtering it before inhalation.

51. Electric dab rigs, on the other hand, allow the user to select a heat setting without the need to manually heat anything.

### MEDICINAL AND ADULT USE CANNABIS IN THE STATE OF ILLINOIS

52. In 2013, finding that the adoption of rules to regulate cannabis use is necessary for the public interest, safety, and welfare of its citizens, the State of Illinois became the 20th state to authorize the cultivation, dispensing, and use of cannabis for medicinal purposes, passing the Medicinal Act. *See* 410 ILCS 130/115.5 ("The General Assembly finds that the adoption of rules to regulate cannabis use is deemed an emergency and necessary for the public interest, safety, and welfare.").

53. The Illinois Department of Public Health manages the registry of Patients and issues registry cards to Illinois residents meeting the program requirements.

54. In 2018, the Alternative to Opioids Act of 2018 (the "Alternative to Opioids Act") was signed into law to expand access to medical cannabis. The Alternative to Opioids Act created the Opioid Alternative Pilot Program (the "OAPP"), which allowed individuals to access medical cannabis as an alternative to prescriptions for opioids as certified by licensed Illinois physicians.

55. Illinois adopted laws allowing medicinal cannabis use because of the therapeutic and beneficial value it could provide to Illinoisans suffering from debilitating illnesses and to

---

[5] *See* https://herb.co/learn/what-is-dabbing (last visited Jan. 24, 2025).

protect "seriously ill patients who have a medical need to use cannabis" from legal prosecution and arrest. 410 ILCS 130/5(d).

56. Illinois passed the CRTA in 2019, legalizing the possession and use of recreational cannabis by persons over the age of 21 in the state of Illinois, subject to certain limitations on use and possession limits.

57. Incorporating lessons learned from the period of strictly medical use cannabis, the General Assembly, "[i]n the interest of the health and public safety of the residents of Illinois," found and declared that:

> [C]annabis should be regulated in a manner similar to alcohol so that . . . cannabis sold in this State will be tested, labeled, and subject to additional regulation to ensure that purchasers are informed and protected; and [that] purchasers will be informed of any known health risks associated with the use of cannabis, as concluded by evidence-based, peer reviewed research.

410 ILCS 705/1-5(a).

58. The Illinois Cannabis Acts appointed various State agencies with rule-making power over the sale, use, and harvesting of cannabis products to regulate, among other items, the amount of THC that can be in a particular product and possessed by a person as well as dosages, labeling, and packaging requirements.

### LEGAL PRODUCTS UNDER ILLINOIS LAW

59. The production and manufacture of cannabis products is limited to appropriately licensed entities in the State of Illinois. With the appropriate licensing, entities can cultivate and grow cannabis flower and make cannabis concentrate from that flower, among other functions.

60. The Illinois Cannabis Acts regulates two general categories of cannabis products permitted to be manufactured, packaged, and sold to retail consumers in the State of Illinois: (1) smokeable products, including smokeable concentrates; and (2) CIPs, such as Vapable Oils,

gummies, tinctures, and oils, among others, that are made by incorporating cannabis concentrate. *See* 410 ILCS 705/1-10.

61.    These categories of products are defined as follows in the CRTA and Department of Agriculture Regulations:

> "**Cannabis concentrate**" means a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of propylene glycol, glycerin, butter, olive oil, or other typical cooking fats; water, ice, or dry ice; or butane, propane, $CO_2$, ethanol, or isopropanol and *with the intended use of smoking or making a cannabis-infused product.*
>
> "**Cannabis-infused product**" means a beverage, food, oil, ointment, tincture, topical formulation, *or another product containing cannabis or cannabis concentrate that is not intended to be smoked*.
>
> "**Smoking**" means the inhalation of smoke caused by the *combustion* of cannabis. 410 ILCS 705/1-10 (emphases added); *see also* 8 ILAC 1000.10.

62.    Pursuant to the above definitions, cannabis concentrate can only be incorporated into and sold to a retail consumer as a: (1) smokeable product; or (2) cannabis-infused product *i.e.* CIP.

63.    The CRTA properly defines smoking as requiring combustion.

64.    Distinct from smoking is the practice of "vaping," which does not require combustion.

65.    The Illinois Department of Agriculture reinforces in its Compliance Alert Notice that "vaping would not generally be considered 'smoking'" under the CRTA, "so long as combustion is not required to vaporize the 'cannabis-infused product'." Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

### CANNABIS LABELING, PACKAGING, AND WARNING REQUIREMENTS

66.    The Illinois General Assembly has declared cannabis should be regulated so that "cannabis sold in this State will be tested, labeled, and subject to additional regulation to ensure that purchasers are informed and protected; [] and purchasers will be informed of any known health

risks associated with the use of cannabis, as concluded by evidence-based, peer-reviewed research." 410 ILCS 705/1-5(b)(5-6); 410 ILCS 130/5.

67. The most basic requirement is that the product package must define what the product is, whether that be an edible CIP, smokeable product, or other form of legal product, and labeled with the common name of the product. *See* 410 ILCS 705/55-21(e)(2); 8 ILAC 1300.930(b)(2); 77 ILAC 720.40(b); 410 ILCS 705/55-21(e); 410 ILCS 130/80; 77 ILAC 946.400.

68. The contents of the product must be listed, including ingredients, and the total of listed contents shall not be below 85% or above 115% of the labeled amount. 410 ILCS 705/55-21(e)(8)(B); 8 ILAC 1000.420(d)(8)(B).

69. Cannabis products produced by concentrating or extracting ingredients from a cannabis plant must identify the type of extraction method, solvents or gas used to create the concentrate or extract, and any other chemicals or compounds used to produce or that were added to the concentrate or extract, including when that concentrate or extract is utilized in either a CIP or smokeable product. 410 ILCS 705/55-21(g).

70. The Illinois Cannabis Acts require that CIPS "shall meet the packaging and labeling requirements contained [therein.]" 410 ILCS 705/55-5(a).

71. With respect to CIPs intended for consumption, the maximum limit imposed by the Illinois Cannabis Acts for one package is no more than 100 milligrams. 8 ILAC 1000.420(f); 8 ILAC 1300.920(d); 410 ILCS 705/55-21(k).

72. Illinois imposed these limitations to protect the health and safety of the residents of Illinois and other cannabis purchasers, as demonstrated by the State's own warnings against overconsumption:

**Are there added risks for regular cannabis use?**

Routine and high-dose cannabis use may have more health consequences than occasional or low-dose cannabis use.   Remember, some cannabis sold at Illinois dispensaries has higher amounts of THC than illegally grown and sold cannabis before legalization.

[6]

73.     Even in the limited research conducted to date, high-potency cannabis products have been linked to significant risk of psychosis and other psychiatric-related illnesses.[7]

74.     With recommendations from the Department of Public Health, the Illinois Cannabis Acts also mandate warnings for specific product types that "must" be present on labels when offered for sale to an end consumer:

> Cannabis that may be smoked must contain a statement that 'Smoking is hazardous to your health.'
>
> Cannabis-infused products (other than those intended for topical application) must contain a statement 'CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours. This product was produced in a facility that cultivates cannabis, and that may also process common food allergens.'

410 ILCS 705/55-21(j).

75.     Once *any* label has been affixed to the primary packaging of cannabis or a CIP, it may not be altered or destroyed by anyone other than the purchaser. 410 ILCS 705/55-21(l).

76.     Cannabis business establishments, including cultivators and dispensaries, may not engage in, maintain, or place advertising that contains any statement or illustration that: (1) is false or misleading; or (2) promotes overconsumption of cannabis or cannabis products. 410 ILCS 705/55-20(a); 410 ILCS 705/55-20(b)(4); 410 ILCS 705/55-21(f); 8 ILAC 1300.930(c).

---

[6] Illinois Cannabis Regulation Oversight Office, https://cannabis.illinois.gov/about/faqs.html#faq-item-faq_copy-0-1 (last visited Jan. 24, 2025).
[7] *See e.g.* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2801827/ (noting that the "most striking finding is that patients with a first episode of psychosis preferentially used high-potency cannabis preparations of the sinsemilla (skunk) variety" which was a potency level of 12-18% THC); https://www.hazeldenbettyford.org/research-studies/addictionresearch/highpotencymarijuana#:~: text=Individuals%20who%20used%20high%2Dpotency,psychotic%20disorder%20than%20non%2Dusers ("Individuals who used high-potency cannabis on a daily basis were found to be five times more likely to experience a psychotic disorder than non-users").

77. Likewise, cannabis product packaging may not include information that "(1) is false or misleading; [or] (2) promotes excessive consumption[.]" 410 ILCS 705/55-21(f); 8 ILAC 1300.930(c); 8 ILAC 1000.420(g).

CANNABIS QUANTITY LIMITS

78. To protect consumers in the State of Illinois, the Illinois Cannabis Acts impose limits on the amount of cannabis that can be possessed by an individual. *See e.g.* 410 ILCS 705/10-10(a)-(b).

79. An individual over the age of 21 purchasing for recreational purposes who is an Illinois State resident is permitted to cumulatively possess no more than 500 milligrams of THC contained in CIPs and 5 grams of cannabis concentrate. 410 ILCS 705/10-10(2).

80. The Illinois Cannabis Acts limits non-residents to cumulatively possessing no more than 250 milligrams of THC contained in a CIP and 2.5 grams of smokeable concentrate. *See* 410 ILCS 705/10-10(a)-(b).

81. An individual purchasing for medicinal purposes cannot purchase more than an adequate supply for their medicinal needs, which the Medicinal Act limits to 2.5 ounces of cannabis in any 14-day period. 410 ILCS 130/130(i)(4); 410 ILCS 130/10(a).

DEFENDANTS' VAPABLE OILS

82. Defendants sell Vapable Oils in 300-milligram, 500-milligram and 1-gram sizes under the brand names Botanist and Superflux.

83. Defendants control the marketing, advertising, and packaging content of each of their brands.

84. Each of Defendants' Vapable Oils are marketed under the product categories of concentrates, extracts, disposable vapes, vape pens, cartridges, or raw products at various dispensaries with no mention or clarification that they are, in fact, CIPs.

85. Defendants' Vapable Oils are CIPs because they are "products," which contain "cannabis concentrate that is not intended to be smoked." Ill. Dep. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

86. Notably, despite Defendants' marketing materials expressly stating that the oil contained in their Vapable Oils are intended to be vaporized – <u>not smoked</u> – Defendants market, package, and sell their Vapable Oils as concentrates or extracts as opposed to CIPS.

87. Defendants' own product marketing denotes that its products create a "[c]annabis-infused vapor inhaled from a liquid cannabis concentrate heated with an electric powered device or battery[, and that v]aporization allows for inhalation of higher-potency concentrate with a delivery method that is an alternative to smoking[.]"[8]

88. Defendants likewise market their Vapable Oils as "requir[ing] special equipment to consume directly[, and being] best enjoyed through vaporization[.]"[9]

89. All of Defendants' Vapable Oils exceed the 100-milligram per-product limit of THC imposed upon CIPs by the State of Illinois.

90. Defendants market and package their Vapable Oils as cannabis concentrates in a number of ways, including through marketing of the products as concentrates, packaging them in amounts which CIPs are prohibited from being sold in, and by omitting their status as CIPs, and further concealing that status by marketing them simply as "vapes" without further description.

---

[8] https://www.iheartjane.com/embed/stores/1332/menu/products/1831010/superflux-grape-guava (last visited Jan. 24, 2025).
[9] https://www.iheartjane.com/embed/stores/1332/products/2208356/superflux-dutch-treat-x-cherry-pie?utm_source=copy&utm_medium=organic_social&utm_campaign=product_share&utm_content=1332 (last visited Jan. 24, 2025).

91.     All of this serves to deceive and confuse consumers into believing that the Vapable Oils are cannabis concentrates instead of CIPs, and, further, that Defendants' Vapable Oils are lawfully compliant products.

92.     The Illinois Cannabis Acts limit a person to possessing only 500 milligrams of THC in CIPs at a time. However, a single purchaser is allowed to possess up to 5 grams of cannabis concentrate.[10]

93.     By misrepresenting their Vapable Oils as cannabis concentrate, Defendants are able to increase the sales of their CIPs by a factor of 11.

94.     If Defendants had complied with the Illinois Cannabis Acts, Illinois consumers would be limited to purchasing up to five 100-milligram cartridges at a time (or any combination of compliant CIPs totaling 500 milligrams) and would be prevented from purchasing additional CIPs.

95.     Under Defendants' current illegal scheme, however, consumers can purchase 10 times that amount (5 grams) as cannabis concentrate in 300-milligram, 500-milligram, and 1-gram increments, and still purchase an additional 500 milligrams of CIPs.

96.     In total, this is 11 times the maximum possession limit of CIPs imposed by law.

97.     As a result, consumers purchase Defendants' Vapable Oils reasonably believing they are perfectly legal and safe to use, and instead receive products that are illegal and cannot be lawfully sold or possessed in Illinois.

98.     Further, Defendants' deceptive practices expose consumers to a risk of overconsumption. Users specifically seek out certain types of cannabis products based on their potential therapeutic benefits like anxiety relief or pain management. By selling their Vapable Oils

---

[10] *See* https://naturescarecompany.com/faq (last visited Jan. 24, 2025).

with THC content well above the legally allowed limit, Defendants put their customers at risk of adverse physical effects like psychoactive effects, anxiety attacks, or overwhelming intoxication.

99.     One of the most important, material features of a cannabis product is the ability for a consumer to legally purchase, possess, and consume the product. Consumers lack the ability to test or independently ascertain the ingredients and legality of Defendants' Vapable Oils at the point of sale. Accordingly, reasonable consumers must and do rely on Defendant to honestly report the legality of its Vapable Oils and their contents when designing, manufacturing, distributing, and selling the Products.

100.     Defendants' unlawful conduct is uniform across their Vapable Oils. They have made no attempt to clarify that their Vapable Oils are CIPs, despite the duties imposed upon them by the Illinois Cannabis Acts.

101.     Defendants knew or should have known that their Vapable Oils were, in fact, CIPs; yet despite that knowledge, they continue to deceptively market and package them as cannabis concentrate, reaping the benefits of their deception.

## ALLEGATIONS SPECIFIC TO CHAD ALSIP

102.     Plaintiff Chad Alsip is an adult and medical use cannabis purchaser.

103.     Among other purchases, on or around December 9, 2023, Plaintiff made an adult use purchase of a 1-gram Botanist Kush Mints Distillate Vape Cartridge from Windy City Cannabis Dispensary in Carpentersville, Illinois.

104.     Plaintiff's total for the Botanist Cartridge before the application of any taxes or discounts was $50.00.

105.     Defendants' cartridges were, and still are, marketed as 300-milligram, 500-milligram, and 1-gram vape cartridges. These products feature upwards of 83% THC each.

106.     Among other purchases, on or around June 29, 2023, Plaintiff made a medical purchase of a 1-gram Superflux Cookie Chem Haze Live Sugar raw product from Zen Leaf Dispensary in St. Charles, Illinois.

107.     Plaintiff's total for the Live Sugar before the application of any taxes or discounts was $50.00.

108.     Defendants' Live Sugar was, and still is, marketed in 1-gram and 2-gram product sizes. These products feature upwards of 79% THC each.

109.     However, at the time Plaintiff made these purchases, Plaintiff was not aware that the Vapable Oils had been improperly labelled and marketed, and were, in fact, unlawful CIPs containing nearly ten times the 100-milligram limit imposed by Illinois law upon each package of CIP.

110.     Making matters more confusing, the label and packaging used by Defendants for their Vapable Oils generally included, and continue to include, the warning for smokeable products, and failed to contain the required warning for CIPs.



111.    Plaintiff relied on Defendants' representations that the sale of their products were compliant and safe, based on their status and holding themselves out as licensed cannabis companies under the State's robust regulatory structure, and reasonably assumed compliance with same in purchasing the Vapable Oils.

112.    Plaintiff relied on Defendants' representations, and the information and warning labels on the Vapable Oils, in deciding to purchase the Vapable Oils. Plaintiff did not know that the Vapable Oils he was purchasing were actually CIPs that were not compliant with the Illinois Cannabis Acts.

113.    Plaintiff would not have purchased these Vapable Oils had Plaintiff known that it was not legal, did not have appropriate warnings and information on the packaging and product, and did not have any dosing instructions.

114.    Moreover, Plaintiff would not have been able to purchase the Vapable Oils, as the sales were prohibited by the Illinois Cannabis Acts.

115.    The Vapable Oils are substantially less valuable (and in fact are worthless as a legal alternative to illicit cannabis) because they do not comply with the cannabis standards set out by the State of Illinois. The Vapable Oils should not, and legally could not, have been sold or possessed by consumers.

116.    Plaintiff was misled and harmed as a proximate result of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

117.    Plaintiff brings claims individually and on behalf of the following class pursuant to Rule 23:

> All persons who, within the applicable limitations period, purchased within the State of Illinois any Vapable Oils manufactured, processed, made, labeled, and/or packaged by Defendants.

118.   Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

119.   **Numerosity**. The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. The total sales of Vapable Oils during the applicable statutory period are in the tens of millions and there are thousands of proposed class members. The individuals who purchased Vapable Oils can be ascertained through records in the possession, custody, or control of Defendants.

120.   **Commonality and Predominance**. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendants misled consumers into purchasing Vapable Oils;
- Whether Defendants misrepresented or concealed material facts about the Vapable Oils, including the nature of the products and safety of using them;
- Whether Defendants improperly labeled and advertised the Vapable Oils;
- Whether the Vapable Oils constitute an unreasonable safety risk;
- Whether Defendants breached their warranties owed to Plaintiff and the Class Members;
- Whether Plaintiff is entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;
- Whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Acts and similar laws when they sold to consumers the Vapable Oils; and
- Whether Defendants acted with deliberate indifference to the safety risks posed by the Vapable Oils.

121.    **Typicality**. Plaintiff's claims are typical of the Class members' claims insofar as they are identical and Plaintiff has no circumstances antagonist to the Class.

122.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation.

123.    **Superiority**. A class action is the superior mechanism for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*
on behalf of Plaintiff and the Class**

124.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

125.    Defendant, Plaintiff, and Class Members are "persons" within the meaning of the Uniform Deceptive Trade Practices Act (the "UDTPA") 815 ILCS 510/1(5).

126.    The UDTPA declares that any 'person,' such as Defendants, engages in a deceptive trade practice when, in the course of their business, they "represent[] that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[.]" 815 ILCS 510/2(a)(5).

127.    It is also a deceptive practice for a person to represent "that goods . . . are of a particular standard[] or quality[,]" to "advertise[] goods . . . with the intent not to sell them as advertised[,]" or to "engage in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7),(a)(9),(a)(12).

128.     As alleged above, Defendants knowingly and/or recklessly misrepresented that the Vapable Oils they produced, distributed, marketed, and advertised were legally compliant cannabis concentrate, by, among other ways, introducing these products into the stream of commerce as licensed Cultivators in the State of Illinois, when in fact and as Defendants actually knew, they were CIPs.

129.     Defendants knowingly misrepresented and advertised the goods as having a "quality," "sponsorship," "approval," "characteristics," "quantities," or "ingredients" that they did not have – namely, that they were cannabis concentrates.

130.     Each of the Vapable Oils that Defendants produced were non-compliant with the Illinois Cannabis Acts, and thus unlawful to sell, due to, in addition to other factors, the quantity and contents (ingredients) of each product failing to comply with the legal restrictions imposed by the Illinois Cannabis Acts.

131.     Moreover, Defendants expressly marketed the Vapable Oils as cannabis concentrate, not CIPs, which at its core, is a misrepresentation of material fact to any transaction regarding the quality and characteristics of the products at issue.

132.     Defendants' misrepresentations through their marketing and advertising led to the deception and confusion of consumers, including Plaintiffs and the Class, regarding the nature and legal status of the Vapable Oils and their proper use.

133.     Defendants' acts and practices were likely to, and did, in fact, deceive and mislead members of the public, including consumers acting and relying reasonably under the circumstances, to their detriment, including Plaintiffs and members of the Class.

134.     The unlawful Vapable Oils marketed and sold by Defendants were also likely to be confused with products that did conform to the legal requirements imposed by the Illinois Cannabis

24

Acts, as they were sold and marketed as lawful goods and were not distinguished from lawful goods when marketed or sold in any way.

135.     Defendants' deceitful conduct continues, and they continue to produce, market, and sell these unlawful Vapable Oils across a number of jurisdictions. Putting unknowing consumers at risk for their joint financial benefit.

136.     With the dynamic and opaque nature of the cannabis industry, consumers, including Plaintiffs and other members of the Class will not reasonably be able to avoid Defendants' products in the future, as Defendants continue to merge, acquire, create, and exchange various brands and manufacturers with other industry competitors.

137.     Plaintiff, on behalf of himself and the putative Class Members, requests that the Court enter an order for a Declaratory Judgement declaring that Defendants' manufacture, marketing, and sale of Vapable Oils as described is a deceptive trade practice in violation of the UDTPA.

## <u>COUNT II</u>
### Violation of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq.* on behalf of Plaintiff and the Class

138.     Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

139.     Plaintiff, Members of the Class, and Defendants are "persons" within the meaning of 815 ILCS 505/1(c) and 510/1(5).

140.     At all times mentioned herein, Defendants engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), by engaging in the offering and sale of things of value in Illinois.

141.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that ". . . [u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in . . . the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. The ICFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 510/2.

142.    Plaintiffs and Class Members purchased Vapable Oils manufactured and marketed by Defendants.

143.    Defendants misrepresented the Vapable Oils through statements, omissions, ambiguities, half-truths, and/or actions and engaged in unfair or deceptive acts or practices prohibited by the ICFA by engaging in the following, among other conduct.

144.    In violation of the Illinois Cannabis Acts, Defendants manufactured, marketed, and advertised unlawful and dangerous Vapable Oils in volumes of up to 1 gram (1,000 milligrams), containing per package amounts of THC in excess of those allowed by law, the production, sale, and marketing of which is expressly prohibited by the Illinois Cannabis Acts.

145.    To make matters worse, many of the 500-milligram and 1-gram Vapable Oils purchased contain more THC in a single CIP than an out-of-state consumer, or adult-use Illinois resident, respectively, are even allowed to possess.

146.    Defendants accomplished this through a number of deceptions, misrepresentations, omissions, concealments, and other unfair conduct.

147. Defendants undertook this conduct with the intent that consumers and others would rely on their deceptive and unfair schemes, so they could unlawfully market, sell, and profit off of various CIPs being sold as cannabis concentrate.

148. As alleged, Defendants' marketing, packaging, advertising, and business practices were rife with deception.

149. Specifically, Defendants each systematically misrepresented that the Vapable Oils at issue were cannabis concentrate by ensuring that they were labelled and sold as such on their own websites as well as those of other retailers, with the intent that their CIPs, the Vapable Oils, would be sold as cannabis concentrate, resulting in the sale of CIPs to consumers in quantities and concentrations which were unsafe and unlawful.

150. Defendants controlled the marketing of the products at issue, guaranteeing the Vapable Oils were marketed as "cannabis concentrate" or "vapes" in their own advertising and educational materials, as well as those which they imposed upon other retailers. Defendants also governed the representations made at related and third-party retailers.

151. Defendants undertook the marketing, advertising, labelling, and packaging of Vapable Oils with the intent that consumers rely on the representations made therein.

152. Defendants omitted and actively concealed information from Plaintiff, the Class, and other consumers, that was not only material to each transaction, but that Defendants were duty bound to provide under the Illinois Cannabis Acts.

153. Defendants concealed the fact that the products they were selling were being sold unlawfully, and that the products did not comply with Illinois law.

154.     Defendants did so by consistently representing their unlawful products were other categories of products that could potentially be lawful, like cannabis concentrate, or categories that were intentionally ambiguous, like "vapes", in order to conceal their true nature.

155.     Moreover, all CIPs are required to be labelled and packaged at the point of preparation, where each product shall be labelled with "the common or usual name of the item and the registered name." 410 ILCS 705/55-21(e)(2).

156.     However, here, Defendants failed at any time to properly classify their Vapable Oils, omitting their status as CIPs.

157.     Defendants failed to include necessary warnings and safety information regarding overconsumption, while including inappropriate and incorrect warnings. Specifically, Defendants applied the warning "Smoking is hazardous to your health," a required warning for "[c]annabis that may be smoked." In doing, so Defendants concealed the true nature of the product despite their duty to provide the accurate warning for CIPs, a warning which they ultimately omit.

158.     This has a likelihood to, and did, result in confusion among Plaintiff and the Class as to what Defendants' Vapable Oils actually were, and whether they were CIPs, which are vaped and cannot be smoked, or cannabis concentrate, which is intended to be smoked.

159.     Defendants knowingly and/or recklessly did so in order to avoid the regulations associated with CIPs, allowing Defendants to sell more product on a per transaction basis, subject to the higher recreational purchasing limits allowed for cannabis concentrates as opposed to CIPs.

160.     Defendants knew their Vapable Oils were legally defined as CIPs, meaning they were capped at lesser per transaction sales limits than cannabis concentrates.

161.    By selling CIPs as cannabis concentrate, Defendants were able to sell much larger quantities of THC by volume through the increased sales limits – quantities that violated Illinois law.

162.    This conduct, and the conduct generally alleged herein constitutes deceptive practices under the ICFA.

163.    Defendants undertook this scheme of conduct in an intentional, systematic, and knowing manner.

164.    The deceptive conduct pervades Defendants' product descriptions, packaging, marketing, and public statements.

165.    Defendants made the deceptive representations and omissions or concealment of material facts discussed above with the intent that Plaintiffs and other consumers rely upon them in determining that their Vapable Oils were lawful and whether to purchase them or a competing product.

166.    Defendants' improper conduct is misleading in a material way in that it induced Plaintiffs and the Class Members to purchase Defendants' Vapable Oils when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with a reckless disregard for the truth.

167.    Plaintiffs and other members of the Class were exposed to, and reasonably relied upon, Defendants' deceptive representations when they purchased Defendants' Vapable Oils from various dispensaries across the State of Illinois, believing they had purchased lawful, safe products, in compliance with the Illinois Cannabis Acts.

168.    Plaintiffs and other members of the Class were harmed in the full amount of the monies paid for the Vapable Oils purchased, as they were not lawfully placed into commerce by

Defendants, and were willfully, wantonly, and/or with reckless disregard for the truth, marketed by Defendants as being compliant with the Illinois Cannabis Acts (they are not), lawful for an individual to possess in many instances (they are not), and not unnecessarily dangerous (they are), in contravention of the Illinois Cannabis Acts.

169.    Defendants' conduct also amounts to a series of unfair practices.

170.    A plaintiff may recover where against a defendant for undertaking an unfair practice where that practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 25 (2013).

171.    As discussed at length, Defendants' conduct offends the public policy of the State of Illinois, including, at a minimum, the Illinois Cannabis Acts, Department of Agriculture, Department of Public Health, and related governmental regulations, and basic public policies aimed at protecting consumers and ensuring that cannabis products are offered safely and legally in Illinois.

172.    Defendants' mischaracterization of certain of their products as cannabis concentrate instead of CIPs resulted in the increase of their per unit sales and acquiring significant market control of the cannabis industry in the State of Illinois.

173.    As discussed, Defendants' conduct violates the strict requirements of the Illinois Cannabis Acts which define cannabis concentrate, CIPs, and their packaging, labelling, and similar restrictions.

174.    Defendants categorized their Vapable Oils (CIPs) as cannabis concentrate, or confusingly as "vapes," with no further information, in order to sell greater volumes of the product

by capitalizing on the State of Illinois's higher daily limit on sales of cannabis concentrate, namely, the possession limits imposed upon the purchaser.

175.    In doing so, Defendants unlawfully promoted the unregulated overconsumption of cannabis by marketing, promoting, and selling improperly labeled and packaged cannabis products that fail to feature or conform to the safeguards against overconsumption imposed by the Illinois Cannabis Acts. Specifically, safety labels, serving size limits, serving size identification, and legal quantity limits.

176.    Defendants' conduct foils the purpose and intent of the Illinois Cannabis Acts by undermining Illinois residents' right to access safe and legal cannabis in a regulated and controlled market.

177.    Defendants' pursuit of profit in disregard of the Illinois Cannabis Acts and their safety requirements is not only unethical and unscrupulous, it is immoral and oppressive.

178.    These are dangers sought to be mitigated by the Illinois Cannabis Acts through their dosing, labelling, and packaging requirements which expressly require that "[p]ackaging must not contain information that: (1) is false or misleading; [or] (2) promotes excessive consumption[.]" 410 ILCS 705/55-21(f).

179.    As such, Defendants' conduct amounts to a pervasive and systemic series of acts done in violation of the requirements of the Illinois Cannabis Acts and their enabling regulation in order to advance Defendants' own interests and increase Defendants' profits.

180.    The requirements imposed upon Defendants by the Illinois Cannabis Acts serve the public policy of the State of Illinois by promoting and preserving the health and safety of its residents in the face of a dangerous industry.

181.    To further this, the Illinois Cannabis Acts recognize the lack of consumer and purchaser knowledge regarding cannabis in all its forms, as well as the laws and regulations that govern its purchase and consumption.

182.    The Illinois Cannabis Acts imposed the regulations, which were ignored and violated by Defendants, in order to remedy the potential harms caused by this lack of knowledge, and shifts the duty of education and legal compliance to cannabis companies like Defendants – a duty that Defendants failed to uphold here.

183.    As such, Defendants' conduct is wholly unfair to the people of the State of Illinois, as well as those visiting Illinois and consuming cannabis in reliance on the public policies and laws of the State, and in contravention of the public policy goals of the general assembly in passing the Illinois Cannabis Acts.

184.    The only benefit it provides to any party is the reduced compliance costs and increased profits enjoyed by Defendants as a result of their conduct.

185.    Plaintiff and Class Members would not have purchased Defendants' Vapable Oils but for Defendants' deceptive and unfair conduct described herein. As Plaintiff and the Class Members could not and would not have purchased an unlawful product, and would have purchased a legally compliant alternative instead.

186.    For the reasons discussed herein, Defendants violated and continue to violate ICFA by engaging in the deceptive or unfair acts or practices prohibited by 815 ILCS 505/2 and 510/2.

187.    Plaintiff and Class Members are entitled to damages, including punitive damages, in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

## COUNT III
**Common Law Fraud**
**on behalf of Plaintiff and the Class**

188.    Plaintiff incorporates the allegations in the foregoing Paragraphs  as if fully stated herein.

189.    Defendants made continuous representations through their marketing materials and packaging labels that their Vapable Oils were cannabis concentrates that complied with the Illinois Cannabis Acts.

190.    These representations were false and material.

191.    The Vapable Oils are CIPs that do not comply with the Illinois Cannabis Acts.

192.    Defendants know that the Vapable Oils they produce are actually CIPs that did not comply with the requirements of the Illinois Cannabis Acts, and that were prohibited from being sold to Plaintiff and the Class.

193.    Defendants' material misrepresentations operated as an inducement to Plaintiffs and the Class to purchase Vapable Oils that, except for such inducement, they would not have purchased. It was Defendants' intent that their inducement would lead to consumers like Plaintiffs and the Class purchasing Vapable Oils thinking that they were cannabis concentrates.

194.    Plaintiff and the Class trusted and relied upon Defendants' marketing materials and package labels to be truthful, and did not know that these materials were false.

195.    Plaintiff and the Class were reasonable in, and had a right to, their reliance on Defendants' omissions and misrepresentations due to the imposition of a strict regulatory regime on Defendants and other cultivators to ensure their knowledge of the laws and products they produce, market, and sell as a matter of public policy.

196. Defendants' material misrepresentations are intentional. Defendants' intent is that consumers like Plaintiff and the Class purchase Vapable Oils, regardless of the Vapable Oils' illegal nature.

197. Defendants' material misrepresentation categorizing their Vapable Oils as cannabis concentrates was also intentional conduct aimed at selling greater volumes of the product by capitalizing on the State of Illinois's higher per transaction limit on sales of cannabis concentrate compared to CIPs (which their Vapable Oils actually are).

198. Plaintiff and the Class suffered harm as a result of Defendants' misrepresentations and omissions.

199. Plaintiff and the Class would not have purchased Defendants' Vapable Oils had Defendants not omitted or concealed their unlawful nature, as they would not and could not have purchased an unlawful product, and would have purchased a legally compliant alternative instead.

200. As a direct and proximate cause of Defendants' conduct, Plaintiffs and the Class are entitled to damages, including punitive damages, in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

**COUNT IV**
**Fraudulent Concealment**
**on behalf of Plaintiff and the Class**

201. Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

202. Defendants knew that the Vapable Oils they produced did not comply with the requirements of the Illinois Cannabis Acts, and were prohibited from being sold to Plaintiffs and the Class.

203. Defendants' marketing omitted or concealed the fact that their Vapable Oils were unlawful, and unable to be sold by Defendants, any dispensary, or purchased or possessed by

consumers. Defendants' marketing further omitted or concealed the fact that their Vapable Oils were CIPs, not cannabis concentrate.

204. As Defendants were required by the Illinois Cannabis Acts to know the regulations and requirements of the law, they had knowledge that their Vapable Oils were CIPs and were not in compliance with the Illinois Cannabis Acts.

205. It was not within reasonably diligent attention, observation, and judgement of Plaintiffs and the Putative Class that Defendants' Vapable Oils were not only CIPs, but noncompliant with the Illinois Cannabis Acts. That Defendants were actually concealing or suppressing these material facts was not reasonably known to Plaintiffs and the Class given the complex and highly-regulated nature of the cannabis industry.

206. Defendants concealed and omitted the fact that their Vapable Oils were actually CIPs with the intention that Plaintiff and the Class be misled as to the true condition of the Vapable Oils – that they do not comply with Illinois's cannabis laws.

207. Plaintiff and the Class were reasonably misled by Defendants' omissions and concealment of the true nature of their Vapable Oils.

208. Plaintiff and the Class suffered harm as a result of Defendants' omissions and concealment. Plaintiff and the Class would not have purchased Defendants' Vapable Oils had Defendants not omitted or concealed their unlawful nature, as they would not and could not have purchased an unlawful product, and would have purchased a legally compliant alternative instead. As a direct and proximate cause of Defendants' conduct, Plaintiff and the Class are entitled to damages, including punitive damages, in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

## COUNT V
### Breach of Express Warranty
### on behalf of Plaintiff and the Class

209.     Plaintiffs incorporate the allegations in the foregoing Paragraphs as if fully stated herein.

210.     Plaintiffs and each other Class Member formed a contract with Defendants at the time they purchased Vapable Oils. The terms of the contract include the promises and affirmations of fact made by Defendants on the Vapable Oil packaging, labeling and instructions, and through marketing and advertising, including that the Vapable Oils would be of the quality and character represented through their promises and affirmations of fact about the legality, safety, dosage, and efficacy of the product, in addition to the lack of disclosure regarding possession limitations.

211.     The promises and affirmations of fact made by Defendants through their marketing, packaging, labeling, advertising and instructions constitute express warranties and became part of the basis of the bargain, and are part of the standardized expectation between Class Members and Defendants.

212.     Defendants expressly warranted that their Vapable Oils were legal, safe, effective, and appropriately dosed, and did not contain any undisclosed risks.

213.     Defendants made these misrepresentations, or omitted material information, in their marketing (including their websites and the websites of their affiliate dispensaries) for the Vapable Oils, and the Vapable Oil packaging, labeling, and instructions.

214.     Defendants sold Vapable Oils that they expressly warranted were legal, safe, effective, and appropriately dosed cannabis products that did not contain any undisclosed risks.

215.     Defendants' Vapable Oils did not conform to their express representations and warranties because the products contained undisclosed risks.

216. As licensed manufacturers, processors, and makers of the Vapable Oils, Defendants were required by the Illinois Cannabis Acts to have, and did have actual knowledge that their Vapable Oils were not only unlawful products, but they also failed to conform to the express representations and warranties Defendants had made regarding their Vapable Oils.

217. Defendants' knowledge that their Vapable Oils were unlawful and failed to conform to their express representations and warranties, is made evident by the State's announcement that certain products, like Defendants Vapable Oils, are CIPs. *See* Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

218. At all times relevant times, Illinois had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

219. At the time Defendants marketed and sold their Vapable Oils, they recognized the purposes for which the products would be used, and expressly warranted the products were legal, safe, effective and appropriately dosed for intended use, and did not contain any undisclosed risk. These affirmative representations became part of the basis of the bargain in every purchase.

220. Defendants breached their express warranties with respect to their Vapable Oils as they were not of merchantable quality and were not fit for their ordinary purpose. Defendants promised legal, safe, effective, and appropriately dosed products, but the Vapable Oils were not as promised because their actual legal and safety profile was not the same as that represented and bargained for.

221. Plaintiffs and each other Class Members would not and could not have purchased the Vapable Oils had they known these products carried undisclosed risks and were unlawful.

222.    To the extent applicable, direct privity is not required between Defendants and Plaintiffs or each other Class Members because among other things, Defendants made direct statements about the safety of their products, and intended their statements and affirmations to flow to Plaintiffs and each of the other Class Members.

223.    Defendants maintained a strict list of authorized dispensaries that they contract with. Defendants directly sold the Vapable Oils themselves or through authorized dispensaries operating under strict direction from Defendants.

224.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and each other Class Members have been injured and suffered damages in the amount of the purchase price of the Vapable Oils, in that the Vapable Oils they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

225.    Although Plaintiffs do not seek to recover for physical injuries, Defendants' Vapable Oils carried undisclosed risks to Plaintiffs and other Class Members.

226.    Because Defendants had actual knowledge of that their Vapable Oils were unlawful, and failed to conform to the express representations and warranties made regarding the Vapable Oils, pre-suit notice of Plaintiff's claim is not required.

**<u>COUNT VI</u>**
**Breach of Implied Warranty**
**on behalf of Plaintiffs and the Class**

227.    Plaintiffs incorporate the allegations in the foregoing Paragraphs as if fully stated herein.

228.    Plaintiffs and each other Class Members formed a contract with Defendants at the time they purchased Vapable Oils. The terms of the contract include the promises and affirmations of fact made by Defendants in their marketing, packaging, labeling and instructions for the Vapable

Oils, including that the Vapable Oils would be of the quality and character represented through their promises and affirmations of fact about the legality, safety, dosage, and efficacy of the product, in addition to the lack of disclosure regarding per-product and possession limitations.

229. The foregoing constitute implied warranties and became part of the basis of the bargain, and are part of the standardized expectation between Class Members and Defendants.

230. Defendants impliedly warranted that their Vapable Oils were legal, safe, effective, and appropriately dosed for intended use, and did not contain any undisclosed risks.

231. Defendants made these misrepresentations, or omitted material information, in their marketing (including their websites and the websites of their authorized dispensaries) for the Vapable Oils, and the Vapable Oils' packaging, labeling, and instructions.

232. Defendants sold Vapable Oils that they impliedly warranted were cannabis concentrates that were legal, safe and effective cannabis products that did not contain any undisclosed risks.

233. Defendants' Vapable Oils did not conform to their implied representations and warranties because the products were CIPs rather than cannabis concentrates and contained undisclosed risks.

234. As licensed manufacturers, processors, and makers of the Vapable Oils, Defendants were required by the Illinois Cannabis Acts to have, and did have actual knowledge that their Vapable Oils were not only unlawful products, but they also failed to conform to the implied representations and warranties Defendants had made regarding their Vapable Oils.

235. Defendants' knowledge that their Vapable Oils were unlawful and failed to conform to their implied representations and warranties, is made evident by the State's announcement that

certain products, like Defendants Vapable Oils, are CIPs. *See* Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

236.    At all times relevant times, Illinois had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

237.    At the time Defendants marketed and sold their Vapable Oils, Defendants recognized the purposes for which the products would be used, and impliedly warranted the products were legal, safe, effective, and appropriately dosed for intended use, and did not contain any undisclosed risk. These representations became part of the basis of the bargain in every purchase.

238.    Defendants breached their implied warranties with respect to their Vapable Oils as they were not of merchantable quality and were not fit for their ordinary purpose. Defendants promised a legal, safe, effective, and appropriately dosed product, but the Vapable Oils were not as promised because their actual safety profile was not the same as that represented and bargained for.

239.    Plaintiffs and each other Class Member would not and could not have purchased the Vapable Oils had they known these products carried undisclosed risks and were unlawful.

240.    To the extent applicable, direct privity is not required between Defendants and Plaintiffs or each other Class Member because among other things, Defendants are a manufacturer and made direct statements about the safety of their products and intended their statements and affirmations to flow to Plaintiffs and each other Class Members. Further, Plaintiffs and each other Class Members were intended third-party beneficiaries to the extent Defendants made any warranty or representation to a dispensary who in turn resold Vapable Oils to consumers.

241.     Defendants maintained a strict list of authorized dispensaries. Defendants directly sold the Vapable Oils themselves through their own dispensaries or through authorized dispensaries operating under strict direction from Defendants.

242.     As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and each other Class Members have been injured and suffered damages in the amount of the purchase price of the Vapable Oils, in that the Vapable Oils they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

243.     Because Defendants had actual knowledge that their Vapable Oils were unlawful and failed to conform to the implied representations and warranties made regarding the Vapable Oils, pre-suit notice of Plaintiff's claim is not required.

**COUNT VII**
**Unjust Enrichment on behalf of Plaintiff and the Class**
**(*Pled in the alternative to Counts V and VI*)**

244.     Plaintiff incorporates the foregoing allegations in Paragraphs 1 – 208 as if fully stated herein.

245.     To the extent that the Court finds that the transactions to sell Vapable Oils as alleged herein constitute a contract, such contract is void ab initio as a contract for the sale of unlawful goods, with non-compliant Vapable Oils and unlawful cannabis products as the subject of each transaction.

246.     By manufacturing, advertising, marketing, selling, and profiting off of the sale of unlawful products to Plaintiff and the Class, Defendants were unjustly enriched by their unlawful conduct.

247.     Defendants' unjust enrichment occurred to the detriment of Plaintiff and members of the Class.

248. The benefit retained by Defendants is far greater than the monies paid by Plaintiff and members of the Class, as Defendants are not only enriched by the funds which they have received from Plaintiff and members of the Classes in exchange for Defendants' unlawful products, but Defendants also benefit by reducing what would ordinarily be necessary compliance expenses to ensure their Vapable Oils are safe and compliant or properly labelled and packaged, further enriching them to the detriment of consumers, including Plaintiff and the Classes.

249. Defendants have thus been unjustly enriched by at least the amount that Plaintiff and each member of the Class spent on their Vapable Oils and any associated interest. It would be unjust to allow Defendants to retain this enrichment.

250. Defendants' retention of these monetary benefits violates fundamental principles of justice, equity, and good conscience.

251. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendants have been unjustly enriched to Plaintiff and the members of the Class's detriment, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chad Alsip, on behalf of Plaintiff and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendants as follows:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as class representative, and appointing his counsel as class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. An award of punitive damages for Defendants' misconduct and deliberate indifference;

d. An award of reasonable attorneys' fees, costs, and other litigation expenses;

e. An award of pre- and post-judgment interest as available under law;

f. The disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct; and

g. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: January 24, 2025                    Respectfully submitted,

                                           **CHAD ALSIP**, on behalf of themselves and others similarly situated

                                           By: /s/ *Laura Luisi*
                                           Laura Luisi (Atty. No. 6321034)
                                           Jamie Holz (Atty. No. 6319247)
                                           **LUISI HOLZ LAW**
                                           161 N. Clark St., Suite 1600
                                           Chicago, Illinois 60601
                                           Tel: (312) 639-4478
                                           LuisiL@luisiholzlaw.com
                                           HolzJ@luisiholzlaw.com

                                           *Attorneys for Plaintiff and the Putative Class*