**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHAD ALSIP, individually and on behalf of similarly situated individuals, | | |
| | | No. 25 C 867 |
| Plaintiff, | | Judge Thomas M. Durkin |
| v. | | |
| ACREAGE HOLDINGS, INC.; IN GROWN FARM, LLC; NCC, LLC; ACREAGE HOLDINGS AMERICA, INC.; and ACREAGE HOLDINGS WC, INC., | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Chad Alsip alleges that Defendants fraudulently market certain cannabis vaping products as "cannabis concentrate" when they are actually "cannabis infused," as defined by Illinois regulations. He claims that this alleged misrepresentation violates the Illinois Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud Act, and constitutes a breach of warranty, among other claims under state law. Defendants have moved to dismiss for lack of standing and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(6). That motion is granted.

**Background**

As is relevant here, Illinois regulations distinguish between two types of cannabis products:

> "Cannabis concentrate" means a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of propylene glycol, glycerin, butter, olive oil, or other typical cooking fats; water, ice, or dry ice; or butane, propane, $CO_2$, ethanol, or isopropanol and with the intended use of smoking or making a cannabis-infused product.
>
> "Cannabis-infused product" means a beverage, food, oil, ointment, tincture, topical formulation, or another product containing cannabis or cannabis concentrate that is not intended to be smoked.

410 ILCS 705/1-10. Illinois regulations provide a personal possession limit of 5-grams of THC for "cannabis concentrate" products, but the regulations do limit the amount of THC in such "concentrate" products. By contrast, "cannabis-infused" products are limited to 100 milligrams of THC per package by Illinois regulations. Alsip alleges that Defendants intentionally misrepresent their product as a "concentrates" in order to take advantage of the higher THC limits.

In addition to different THC content limits, "concentrate" and "infused" products are distinguished by their intended use. According to the regulations, "concentrates" are intended to be smoked, while "infused" products are not. Alsip asserts that Defendants "vaping" products should be classified as "infused," not as "concentrates," because "vaping" is not "smoking" and only "smoking" products can be "concentrates," so "vaping" products must be "infused" products. Alsip justifies his assertion that "smoking" is not "vaping" with reference to Illinois cannabis regulations providing that "smoking" means "the inhalation of smoke caused by

2

combustion of cannabis," *see* 410 ILCS 705/1-10, whereas, according to Alsip, "vaping . . . does not require combustion." *See* R. 1 at 13 (¶ 64).

In sum, Alsip alleges that he intended to purchase a "concentrate" product but received an "infused" product intended for "vaping," that was not actually safe to vape because it included THC content higher than what the State of Illinois has determined is safe for an "infused" product. On this basis, Alsip claims that the product he purchased is worthless. The allegation that he failed to receive the benefit of his bargain in purchasing Defendants' products is the basis of all his claims.

## Analysis

### I.      Standing

Defendants first argue Alsip hasn't plausibly alleged an injury. The Seventh Circuit has explained that a plaintiff who pays more for a product "than they would have had they known of the risks" has alleged a "financial injury" sufficient to establish standing. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). That is what Alsip alleges here when he alleges that the product he purchased is intended to be vaped, but contains an amount of THC that is unsafe for vaping.

Defendants argue that this allegation does not plausibly establish an injury because Alsip "never articulates in the Complaint why Vapable Oils are 'unsafe.'" R. 29 at 10. But Alsip does allege that Illinois regulations limit the amount of THC in an "infused" product to 100 milligrams. And according to Alsip "vaping" products can only be classified as "infused" products under Illinois regulations. He concludes that

this means the State of Illinois has determined that "vaping" products must be limited to 100 milligrams to be safe, and consequently, that Defendants products containing more than that limit are unsafe. In other words, Alsip alleges that the product he bought wasn't good for its intended use. This is a plausible injury sufficient to establish standing.[1]

### III. Misrepresentation & Fraud Claims

Alsip brings several claims premised on alleged misrepresentation and fraud: Count I for violation of the Illinois Uniform Deceptive Trade Practices Act; Count II for violation of the Illinois Consumer Fraud Act; Count III for common law fraud under Illinois law; and Count IV for fraudulent concealment under Illinois law. These claims fail both because they improperly allege a "mistake of law" as opposed to a "mistake of fact," and because they are fundamentally not plausible as alleged.

### A. Mistake of Law

Alsip's misrepresentation and fraud claims are premised on the allegations that he "reasonably assumed" that Defendants complied with "the State's robust regulatory structure," and that he "would not have purchased these Vapable Oils had

---

[1] Defendants also argue that Alsip's standing must be limited to claims that he actually purchased, rather than including claims regarding products that would have been purchased by other members of his putative class. There is no controlling authority on this issue and district courts are split. *See McKenzie v. Progressive Treatment Sols., LLC*, 2026 WL 636741, at *4-5 (N.D. Ill. Mar. 6, 2026). It is unnecessary for the Court to reach this issue because Alsip has standing for at least of his claims and the Court has dismissed those claims for the reasons explained below.

[he] known that it was not legal." R. 1 at 21 (¶¶ 111-12). In other words, he alleges that Defendants misrepresented that their products complied with Illinois law.

By alleging that Defendants misrepresented whether their products were "legal," Alsip has alleged that Defendants made a misrepresentation of law. This undermines Alsip's claims because "misrepresentations or mistakes of law cannot form the basis of a claim for fraud." *McKenzie v. Progressive Treatment Sols., LLC*, 2026 WL 636741, at \*6 (N.D. Ill. Mar. 6, 2026) (quoting *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 84 (Ill. 2019)). Several courts in this district have recently dismissed claims nearly identical to Alsip's for this reason. *See McKenzie*, 2026 WL 636741, at \*6; *see also Rodriguez v. Cresco Labs, Inc.*, 2025 WL 3215872, at \*4 (N.D. Ill. Nov. 18, 2025); *Patterson v. Green Growth Group, Inc.*, 2026 WL 735188, at \*6 (N.D. Ill. Mar. 16, 2026); *Turek v. Revolution Globel, LLC*, 2026 WL 710946, at \*7 (N.D. Ill. Mar. 13, 2026).

Alsip argues that he alleges a misrepresentation of fact because "the legal classification of cannabis products depends on the manufacturer's intended end use, and evidence demonstrating that intent is within Defendants' exclusive control." R. 26 at 12. In other words, Alsip argues that the core misrepresentation here is that Defendants' products were *intended* to be vaped—not smoked—despite the fact that they contained an amount of THC greater than that permitted for an infused product; i.e., a product that is not "smokable" but is "vapable." And he argues that this question of intent is a question of fact.

The problem with this argument is that Alsip has alleged that Defendants' intent is apparent from its marketing, in that the products were publicly marketed as vapable. He also alleges that the products were marketed as concentrates and that the packaging correctly identified the amount of THC the products contained. Moreover, Alsip's theory of misrepresentation is that the relevant Illinois regulation plainly states that concentrates are intended to be smoked, and according to Alsip, vaping is not smoking, so only infused products can be vaped. All of this information was plainly available on the product packaging or on the face of the relevant regulations.

These allegations show that Alsip does not believe Defendants hid or made any misrepresentations regarding their intent for the use of their products. According to Alsip, Defendants' intent was plain as day. Rather, his true claim is that Defendants' intent violated the regulations and so was not legal. And because Defendants did not misrepresent the content or intended use of their products, any person could determine whether Defendants' intended use complied with the regulations by, as Alsip puts it, "simply reading the statute," or the product labels. *See* R. 26 at 12 (citing *McIntosh*, 135 N.E.3d at 85). Determining Defendants' intent is not relevant to Alsip's claims, and so cannot be a basis to characterize his allegations and misrepresentations of fact.

Alsip also argues that his allegation that he "reasonably relied upon Defendants' misrepresentations" on labels shows that his claims concern misrepresentations about facts on the labels. But the fact that information found on

6

Defendants' labels is relevant to Alsip's claims does not mean that he alleges Defendants included incorrect information on the labels themselves. As discussed, the only misrepresentations identified in Alsip's complaint concern whether Defendants were correct in their interpretation of how Illinois regulations applied to their products. He does not make any allegations that Defendants misrepresented facts about the products themselves.

Therefore, Alsip's misrepresentation and fraud claims (Counts I, II, III, and IV) must be dismissed.

### B.      Plausibility

The foregoing analysis is a sufficient basis to dismiss all of Alsip's claims based on misrepresentation and fraud. But the Court notes that those claims also suffer from a more fundamental lack of plausibility.

Ultimately, Alsip's claims are based on his allegation that "Defendants intentionally or recklessly misrepresented that their Vapable Oils were cannabis concentrates when, in fact, they are [infused products]." R. 1 at 4. According to Alsip, "Defendant made this misrepresentation *to deceive regulators* . . . in order to allow Defendants to sell Vapable Oils using the 5-gram limit applied to concentrates." *Id.* (emphasis added). Furthermore, Alsip argues that these misrepresentations were necessary because Defendants produced a "vaping" product, and "vaping," according to Alsip's interpretation of the regulation, is different from "smoking." So, in order to benefit from the higher THC limits for concentrates, Defendants intentionally

7

described their products as "concentrates," even though "concentrates" are only intended to be "smoked" and not "vaped."

But according to Alsip's interpretation of the relevant regulations, "vaping" products and "concentrate" products are mutually exclusive, and this categorial difference between the two is patently obvious on the face of the regulations. So how can it be that Defendants convinced Illinois cannabis regulators that a "vaping" product was a "concentrate"? Presumably, Illinois cannabis regulators are aware (assuming that Alsip's interpretation of the regulations is correct) that the regulations provide that "concentrates" are only those products that are intended to be "smoked," and that "vaping" isn't "smoking." But Defendants' products are marketed as "*vaping*" products, and nowhere in his complaint does Alsip allege that Defendants misrepresented their products as "*smokable*" on regulatory review in order to pass as "concentrates." How can it be that Illinois regulators dropped the ball in such a blatant way as Alsip's allegations imply?

The likely answer to this question is that, contrary to Alsip's claims, Illinois cannabis regulators understand that "vaping" *is a form of* "smoking," for the reasons articulated in Defendants' brief. And if "vaping" is a form of "smoking," then Defendants' vapable oil products can be categorized and marketed as "concentrates" without violating Illinois regulations, and Alsip's claims are entirely baseless.

In sum, Alsip's claims are based on the implicit allegation that Illinois cannabis regulators are incompetent on an elementary level that is simply not plausible. Perhaps Alsip meant to allege that Defendants made misrepresentations

to the regulators and successfully committed a fraud in the regulatory approval process. But he did not make any such allegations, which is an indication he doesn't have a basis to make such allegations. This failure to allege a misrepresentation to Illinois regulators fundamentally undermines the plausibility of all of Alsip's claims.

## IV.    Warranty & Unjust Enrichment Claims

In Count V, Alsip alleges that "Defendants expressly warranted that their Vapable Oils were legal, safe, effective, and appropriately dosed, and did not contain any undisclosed risks." In Count VI, Alsip also alleges that Defendants impliedly warranted the same. And on this same basis, Alsip alleges unjust enrichment in violation of Illinois law in Count VII.

The problem with these claims is very similar to the problem with misrepresentation and fraud claims. Alsip never alleges that Defendants warranted the safety of their products. As discussed, his allegation that the products are not safe is entirely based on his contention that Defendants improperly classified their "vaping" products as "concentrates" and included an amount of THC permitted by Illinois regulations for "concentrate" products. In other words, his allegations regarding safety are entirely made with reference to their allegedly improper classification under Illinois regulations, and he does not make any allegation that Defendants warranted the safety of the products. As a court in this district recently explained, this mere allegation of failure to comply with Illinois law is "insufficient for a breach-of-express warranty claim, which requires [an allegation] that the goods

9

[do not] conform to the label, [as opposed to not conforming to] the law." *See McKenzie*, 2026 WL 636741, at *8.

Additionally, Alsip has failed to allege the privity necessary to plausibly allege a breach of warranty claim because he bought the products from dealers, not the Defendants who are the manufacturers. *See McKenzie*, 2026 WL 636741, at *8 ("The privity requirement means that only the immediate seller can be sued." (quoting *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 974-75 (N.D. Ill. 2025), and *Ali v. Volkswagen Grp. of Am., Inc.*, 559 F. Supp. 3d 723, 733-34 (N.D. Ill. 2021)). Alsip acknowledges this but cites Illinois cases finding that warranty claims are appropriate without privity based on advertising materials. *See* R. 26 at 17 (citing *Elward v. Electrolux Home Prods.*, 214 F. Supp. 3d 701, 704 (N.D. Ill. 2016)). As Alsip notes, however, this exception applies "where [a] manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Elward*, 214 F. Supp. 3d at 705. Generally, manufacturer advertisements directed at the general public are insufficient to stratify this exception, or else "the exception might swallow the rule." *McKenzie*, 2026 WL 636741, at *9 (citing *Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551, at *4 (N.D. Ill. May 16, 2013)).

Lastly, under Illinois law, Alsip's unjust enrichment claims are "not a separate cause of action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). Instead, "when the plaintiff's particular theory of unjust enrichment is based on" allegations of misconduct that Court has otherwise

rejected with respect to other claims, "the theory of unjust enrichment that the plaintiff has pursued is no longer viable." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Alsip's unjust enrichment claims is also dismissed for that reason.

For these reasons, Counts V, VI, and VII must be dismissed.

## Conclusion

Therefore, Defendants' motion to dismiss [23] is granted without prejudice. Any amended complaint must be filed by April 9, 2026.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: March 25, 2026

11